**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**
Case No. 2:23-cv-14174

EMILY JARDINE,
An Individual,

     Plaintiff(s),

vs.

FT. PIERCE J AUTOMOTIVE
MANAGEMENT, LLC, d/b/a
ARRIGO DODGE CHRYSLER
JEEP RAM FIAT FT. PIERCE,
A Florida Limited Liability Company, and
SANTANDER CONSUMER USA INC.,
d/b/a CHRYSLER CAPITAL,
a Foreign Corporation.

     Defendant).
_____/

## COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF

Plaintiff, EMILY JARDINE, an individual (hereinafter the "**Plaintiff**"), hereby sues Defendant, FT. PIERCE J AUTOMOTIVE MANAGEMENT, LLC, d/b/a ARRIGO DODGE CHRYSLER JEEP RAM FIAT FT. PIERCE, a Florida Limited Liability Company (hereinafter "**Dealer**" or "**Dealership**") and SANTANDER CONSUMER USA INC., d/b/a CHRYSLER CAPITAL, a Foreign Corporation, and alleges:

*GENERAL ALLEGATIONS*

*Allegations as to Parties*

1. At all times material hereto, the Dealership was licensed by the State of Florida as a dealer conducting automobile sales in St. Lucie County, Florida.

2. At all times material hereto, the Dealership was a "dealer" as said term is defined under 49 U.S.C. §32702(2) and Florida Statute §320.77(1)(a) and a "transferor" as said term is defined under 49 C.F.R. §590.3.

3. At all times material hereto, Plaintiff was *sui juris* and a resident of St. Lucie County, Florida. Plaintiff is a "transferee" as said term is defined under 49 C.F.R. §580.3.

4. SANTANDER CONSUMER USA INC. d/b/a CHRYSLER CAPITAL (hereinafter "**Holder**" or "**Lender**") is a Foreign entity authorized to do business in Florida as a lender and a "sales finance company" as defined in Fla. Stat. § 520.02(19) and is a "holder" of a "retail installment contract" as defined in Fla. Stat. § 520.02(8).

*Factual Allegations*

*Purchase of Vehicle - an Undisclosed Daily Rental*

5. On or about February 16, 2023, Plaintiff went to the Dealership to purview used automobiles with the intent of purchasing a vehicle for personal and household use.

6. At the aforementioned time, Plaintiff met with a salesperson whom they considered at the time to be cordial and knowledgeable.

7. In the course of their initial discussion with the salesperson, Plaintiff

related that she needed reliable transportation for personal and household purposes and was in need of a reliable mode of transportation.

8. Said salesperson directed the Plaintiff to consider a 2018 Chevrolet Silverado (hereinafter the "**Vehicle**").

9. The Dealership's salesperson affirmatively represented that the Vehicle was regularly maintained by its prior owner and was in excellent mechanical condition as a result of the regular dealer maintenance.

10. At the time of the purchase of the Vehicle, the Vehicle had been previously titled in the name of Enterprise Fleet Management Trust (hereinafter "**Enterprise**") and had been used as a fleet car in a commercial fleet since the acquisition of the Vehicle by Enterprise.

11. At no time did the Dealership disclose the prior use of the Vehicle as a commercial fleet vehicle prior to its sale to Plaintiff.

12. Based on the representations and the non-disclosures of the Dealership, Plaintiff agreed to purchase the Vehicle.

13. In furtherance of the purchase, Plaintiffs executed and delivered to the Dealership a document entitled "Buyer's Order," which is known more commonly in the automobile sales industry as a "Retail Buyer's Order" (hereinafter the "**Vehicle Buyer's Order**").

14. A true and correct copy of the Vehicle Buyer's Order is attached hereto

and incorporated herein as Exhibit "A."

15. Subsequent to the execution of the Vehicle Buyer's Order, Plaintiffs were presented with and executed a document titled "Retail Installment Sale Contract" (hereinafter the "**Vehicle RISC**").

16. A true and correct copy of the Vehicle RISC is attached hereto and incorporated herein by reference as Exhibit "B".

17. Pursuant to the Vehicle RISC, Plaintiff financed the sum of $22,148.87 of the purchase price of the Vehicle as more particularly set forth therein.

18. Along with the purchase of the Vehicle, Defendant extended and entered into a service contract with the Plaintiff which was administered by Sidecars, Inc. *See* Exhibit "C."

19. After Plaintiff completed the transaction to purchase and finance the Vehicle, Plaintiff brought the Vehicle home in the happy belief they acquired reliable transportation for family and household purposes.

### *Discovery of Latent Defects*

20. After purchasing the Vehicle, Plaintiff began to notice anomalies with the Vehicle's mechanical condition that did not comport with the Dealership's affirmative representations that the Vehicle was a well-maintained vehicle having been regularly maintained by a dealership prior to the Defendant's acquisition of same.

21. Specifically, the Vehicle's transmission failed due to no fault of the Plaintiff.

22. In furtherance of the repairs to the transmission, Plaintiff submitted a claim through her extended service contract administrator which was ultimately denied due to the fact that the defects within the transmission pre-existed the Plaintiff's ownership of the Vehicle.

23. The aforementioned mechanical issues directly stemmed from the fleet use and lack of maintenance while in the Enterprise commercial fleet.

### *Discovery of Dealership Deception Through Concealment of Title History*

24. As a part of the due diligence of Plaintiff in the preparation of the instant lawsuit, Plaintiff obtained the title history for the Vehicle from the Florida Department of Motor Vehicles (hereinafter the "**Vehicle Title History**").

25. A true and correct copy of the Vehicle Title History is attached hereto and incorporated herein by reference as Exhibit "D."

26. Upon receipt of the Vehicle Title History, Plaintiff learned for the first time that the Vehicle had been previously titled to "Enterprise Fleet Management Trust", the commercial fleet management arm of Enterprise Rent-A-Car.

27. Had the Plaintiff been provided truthful and accurate disclosure by the Dealership that the Vehicle was previously owned by Enterprise and used as part of a commercial fleet, the Plaintiff would not have agreed to purchase the Vehicle or

paid considerably less for it.

28. As a result of the misrepresentations and omissions by the Dealership as further set forth herein, the Plaintiff have been damaged.

*Finance Company Liability*

29. Pursuant to 16 C.F.R. §433, known more commonly as the "Federal Trade Commission Rule Regarding the Preservation of Consumer Claims and Defenses" or "FTC Holder Rule," Lender is subject to all claims and defenses of the Plaintiff, as consumers, which are available against the credit-seller, to-wit, the Dealership.

30. In compliance with the FTC Holder Rule, the Vehicle RISC at issue in the instant proceeding bears the following conspicuous language:

> NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER

31. Florida Statue § 516.31(2), known more commonly as the "Florida Holder Rule," provides in pertinent part the following:

> (2) Restriction on Certain Negotiable Instruments and Installment Contracts - A holder or assignee of any negotiable instrument or installment contract, other than a currently dated check, which originated from the purchase

concerning consumer goods or services is subject to all claims or defenses of the consumer debtor against the seller of those consumer goods or services. A person's liability under this section may not exceed the amount owing to the person when that claim or defense is asserted against the person.

32. Accordingly, pursuant to Florida Holder Rule, Lender, as a holder or assignee of any negotiable instrument subject to the requirements of Florida Statutes Chapter 516, is subject to all claims and defenses of the consumer debtor against the seller of those consumer goods or services, to-wit, the Dealership.

33. Specifically, Plaintiff seeks restitution of all installment payments made in furtherance of the RISC, rescission of the transaction in full and damages up to and including the present balance of indebtedness under the RISC.

34. Plaintiff avers that her claim is so large that it exceeds the remainder of any debt owed to Lender under the RISC.

35. All conditions precedent to bringing this action have occurred, have been performed, or have been waived.

## COUNT I
## ACTION FOR VIOLATION OF THE FEDERAL ODOMETER ACT
**(Dealership and Holder)**

36. This is an action for violation of the Federal Odometer Act, 49 U.S.C. §32701, *et sequi* (hereinafter the "**Act**").

37. Plaintiff reaffirms and realleges the allegations contained in Paragraphs 1 through 35 above as if set forth hereat in full.

38. At all times material hereto, Plaintiff was a "transferee" as said term is defined 49 C.F.R. §580.30.

39. At all times material, the Dealership was a "dealer" as said term is defined under 49 U.S.C. §32702(2) and a "transferor" as defined by 49 C.F.R. §580.30.

40. At all times material hereto, the Vehicle was a "motor vehicle" as said term is defined under 49 U.S.C. §32101(7).

41. Dealership failed to provide Plaintiff with the actual title certificate for the Vehicle, for examination and signature, as required by 49 U.S.C. §32705 and 49 C.F.R. §580.5.

42. Instead of complying with the requirements of the Act, the Dealership required Plaintiff to sign a motor vehicle dealer title reassignment supplement, and an application for certificate of title which did not disclose the designation of the Vehicle as an Enterprise commercial fleet vehicle.

43. The sole means by which the Dealership disclosed the vehicle's mileage was through the Transfer Forms.

44. Through the above-described scheme and artifice, the Dealership was able to bypass the requirements of the Act to intentionally conceal the prior ownership history of the Vehicle with fraudulent intent.

45. The Dealership designed and employed this tactic of requesting

Plaintiff to sign the Transfer Forms instead completing the mileage disclosure on the title certificate as required by the Act with the specific intent of perpetuating fraud and deception on Plaintiff.

46. The Dealership intentionally manipulated title procedures both to mislead Plaintiff and to serve its own ends, to-wit: the sale of a poorly maintained commercial fleet vehicle for vastly more than it was worth.

47. As an experienced motor vehicle dealer, the Dealership knew or should have known of the Act, and the regulatory requirements regarding disclosures and deliberately and recklessly disregarded what the law required.

48. The Dealership deliberately deceived Plaintiff through the oral and written misrepresentations and non-disclosures referred to above.

49. The Dealership has violated the Act in that the Dealership failed to disclose the mileage to the Plaintiff in writing on the title certificate in violation 49 C.F.R. § 580.5(c).

50. The Dealership violated the Act with the specific intent to defraud.

51. As a direct and proximate result of the violations of the Act, the Dealership is liable to Plaintiff in the sum of three times their actual damages or $10,000.00, whichever is greater.

52. Plaintiff have retained the undersigned counsel to represent their interest herein and are obligated to pay said counsel a reasonable fee for its services.

53. Pursuant to 49 U.S.C. §32710(b), Plaintiff are entitled to recover their reasonable attorneys' fees and court costs upon entry of judgment in their favor.

**WHEREFORE**, Plaintiff, Emily Jardine, an individual, demands judgment in her favor against Defendants, FT. PIERCE J AUTOMOTIVE MANAGEMENT, LLC, d/b/a ARRIGO DODGE CHRYSLER JEEP RAM FIAT FT. PIERCE, a Florida Limited Liability Company, and SANTANDAER CONSUMER USA INC., doing business as CHRYSLER CAPITAL, a Foreign Corporation, and each of them, jointly and severally, for damages, together with interest, court costs and attorney's fees pursuant to 49 U.S.C. §32710(b).

## COUNT II
## ACTION FOR FRAUD
**(Dealership and Holder)**

54. This is an action for a claim for damages for common law fraud brought pursuant to the pendant jurisdiction of the Court.

55. Plaintiff reallege and reaffirm the allegations contained in Paragraphs 1 through 35 above as if set forth hereat in full.

56. As more particularly described above, the Dealership misrepresented and omitted material facts concerning the transaction to purchase and finance the Vehicle.

57. At the time of the sale of the Vehicle to the Plaintiff, the Dealership, by and through it's agents and employees, omitted material facts by failing to disclose

that the Vehicle had been previously used as a commercial fleet vehicle in the Enterprise fleet and was not well maintained.

58. The Dealership, as a sophisticated entity that is experienced in buying and selling used consumer vehicles, had actual or constructive knowledge that the Vehicle had been previously used as commercial fleet vehicle and was not well maintained.

59. The Dealership knew that the representations and omissions above were false, or made such representations recklessly, when the Dealership had no reasonable grounds for believing those representations were true.

60. The Dealership knew that the omissions concerning the Vehicle's prior use history and maintenance history were material and important.

61. The Dealership intended to deceive Plaintiff and Plaintiff relied upon the misrepresentations and omissions to her detriment.

62. As a direct and proximate result, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff, EMILY JARDINE, an individual, demands judgment in their favor against Defendants, FT. PIERCE J AUTOMOTIVE MANAGEMENT, LLC, d/b/a ARRIGO DODGE CHRYSLER JEEP RAM FIAT FT. PIERCE, a Florida Limited Liability Company, and SANTANDAER CONSUMER USA INC., doing business as CHRYSLER CAPITAL, a Foreign Corporation, and each of them, jointly and severally, together with costs.

## **COUNT III**
## **ACTION FOR NEGLIGENT MISREPRESENTATION**
### (Dealership and Holder)

63. This is an action for negligent misrepresentation brough pursuant to the pendant jurisdiction of the Court.

64. Plaintiff reallege and reaffirm the allegations contained in Paragraphs 1 through 35 above as if set forth hereat in full.

65. As more particularly described above, the Dealership misrepresented and failed to disclose material facts concerning the condition and history of the Vehicle which were false.

66. The Dealership believed the above statements to be true but which were in fact false.

67. The Dealership was negligent in making the statements concerning the transaction to purchase and finance the Vehicle and that the Dealership should have known the statements were false.

68. The Dealership, in making the statements concerning the purchase and sale transaction for the respective vehicles, intended that Plaintiff rely upon said statements.

69. Plaintiff justifiably relied on the false statements concerning the condition of the Vehicle at the time of their purchase of the Vehicle.

70. As a direct and proximate result of the negligent misrepresentation by

the Dealership, Plaintiff have been damaged.

**WHEREFORE**, Plaintiff, EMILY JARDINE, an individual, demands judgment in their favor against Defendants, FT. PIERCE J AUTOMOTIVE MANAGEMENT, LLC, d/b/a ARRIGO DODGE CHRYSLER JEEP RAM FIAT FT. PIERCE, a Florida Limited Liability Company, and SANTANDAER CONSUMER USA INC., doing business as CHRYSLER CAPITAL, a Foreign Corporation, and each of them, jointly and severally, together with interest.

## COUNT IV
## BREACH OF IMPLIED WARRANTY
**(Dealership and Holder)**

71. This is an action for breach of implied warranty under the Magnusson Moss Warranty Act, 15 U.S.C. §2310(d), et sequi (hereinafter the "**Warranty Act**").

72. Plaintiff reaffirms and realleges the allegations contained in Paragraphs 1 through 35 above as if set forth hereat in full.

73. Plaintiff received an implied warranty of merchantability from Dealer, wherein Dealer promised that the subject vehicle would be fit for the ordinary purpose for which such vehicles are normally used.

74. The implied warranty is an "Implied warranty" as defined in the MMWA, 15 U.S.C. §2301(7).

75. Any attempts to disclaim the implied warranty by Dealer are invalid as the Dealer entered into a service contract along with the purchase of the Vehicle.

76. At all times material, the subject vehicle was riddled with latent mechanical defects that could not be discovered by Plaintiff prior to Plaintiff's purchase of the vehicle.

77. Said latent mechanical defects resulted in transmission and engine failure which occurred shortly following purchase and existed at the time of the sale of the Vehicle to Plaintiff.

78. Based on said defects, the Vehicle is no longer fit for the ordinary purpose of providing safe, efficient, and reliable transportation.

79. Dealer's unwillingness to adequately repair the above-described defects constitutes a breach of the implied warranty.

80. Dealer was provided notice of the Vehicle's defects and sufficient opportunities to repair the defects.

81. The Vehicle has not been properly repaired under the implied warranty and continues to be in a defective condition.

82. Plaintiff has been damaged as a result of Dealer's breach of the implied warranty.

**WHEREFORE**, Plaintiff, EMILY JARDINE, an individual, demands judgment in her favor against Defendants, FT. PIERCE J AUTOMOTIVE MANAGEMENT, LLC, d/b/a ARRIGO DODGE CHRYSLER JEEP RAM FIAT FT. PIERCE, a Florida Limited Liability Company, and SANTANDAER

CONSUMER USA INC., doing business as CHRYSLER CAPITAL, a Foreign Corporation, and each of them, jointly and severally for the following:

    A.    A refund of the entire purchase amount paid by Plaintiff for the subject vehicle;

    B.    Declaring acceptance has been properly revoked by Plaintiff and for damages incurred in revoking acceptance;

    C.    Special circumstantial damages in a proximate amount to be determined at or before trial;

    D.    The difference in value of the Vehicle as promised and as actually delivered;

    E.    Consequential, incidental and actual damages;

    F.    Costs, interest and attorneys' fees pursuant to 15 U.S.C.§2310(d)(2); and

    G.    Such other relief this Court deems appropriate.

## COUNT V
## REVOCATION OF ACCEPTANCE
**(Dealership and Holder)**

83.    This is a claim for revocation of acceptance pursuant to the Warranty Act.

84.    Plaintiff reaffirms and realleges the allegations contained in Paragraphs 1 through 35 and 71 through 82 above as if set forth hereat in full.

85.    Plaintiff accepted the Vehicle without discovering the above-described defects because Plaintiff was reasonably induced to accept the Vehicle based on

Dealer's misrepresentations and omissions along with the difficulty of discovering the above facts.

86. Dealer refused and continues to refuse to correct the nonconformities present in the Vehicle.

87. The nonconformities substantially impair the value and use of the Vehicle to the Plaintiff.

88. Plaintiff notified Dealer, verbally and in writing, that Plaintiff was revoking acceptance.

89. Despite receipt of Plaintiff's notices, Dealer failed to respond or otherwise resolve the Plaintiff's warranty dispute.

**WHEREFORE**, Plaintiff, EMILY JARDINE, an individual, demands judgment in her favor against Defendants, FT. PIERCE J AUTOMOTIVE MANAGEMENT, LLC, d/b/a ARRIGO DODGE CHRYSLER JEEP RAM FIAT FT. PIERCE, a Florida Limited Liability Company, and SANTANDAER CONSUMER USA INC., doing business as CHRYSLER CAPITAL, a Foreign Corporation, and each of them, jointly and severally for the following:

A. Declaring acceptance has been properly revoked by Plaintiff and for damages incurred in revoking acceptance;

B. A refund of the entire purchase amount paid by Plaintiff for the subject vehicle;

C. Consequential, incidental and actual damages;

      D.      Costs, interest and attorneys' fees pursuant to 1 5 U.S.C. §2310(d)(2);

and,

      E.      Such other relief this Court deems appropriate.

## *DEMAND FOR JURY TRIAL*

Plaintiff, Emily Jardine, an individual, demands a trial by jury of all issues so triable.

                Respectfully submitted,

                /s/ Joshua E. Feygin
                JOSHUA FEYGIN, ESQ.
                FL Bar No.: 124685
                Email:  Josh@JFeyginesq.com
                **SUE YOUR DEALER – A LAW FIRM**
                1930 Harrison St, Suite 208F
                Hollywood, FL 33020
                Tel: (954) 228-5674
                Fax: (954) 697-0357
                *Counsel for Plaintiff*